# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| JODY BENDER, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | Case No. 4:12cv393 |
| | § | (consolidated with 4:14cv116) |
| CHARLOTTE E. MCLARRY, as representative | § | |
| of the ESTATE of GARY K. MCLARRY, et al., | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER GRANTING
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Pending before the Court is Defendants' Motion for Summary Judgment (Dkt. 145). As set forth below, the Court finds that it should be GRANTED.

Plaintiff's Fourth Amended Complaint names as Defendants the following: Charlotte E. McClarry, as the Representative of the Estate of Gary K. McLarry, Paul H. Fenimore, Bradley A. Cummings, Daniel Winn, Lewis Tatum, Hopkins County, Texas, and Steve Albert. Defendants McLarry, Cummings, Fenimore, Winn and Tatum ("the Deputy Defendants") are all identified as deputy sheriffs for the Hopkins County Sheriff's Office. Although Plaintiff's causes of action are not separately delineated, Plaintiff asserts constitutional claims under 42 U.S.C. § 1983.[1]

---

[1]The Court previously dismissed with prejudice Plaintiff's state law claims against Charlotte E. McClarry, as the Representative of the Estate of Gary K. McLarry, Bradley Cummings, Paul Fenimore, Daniel Winn and Lewis Tatum for conspiracy, false imprisonment, defamation and intentional infliction of emotional distress, as well as any state law claims of

According to Plaintiff, she, Defendant Albert and others owned and operated a used car business. Plaintiff alleges that she was arrested by sheriff's deputies after she repossessed a car she believed to be delinquent on payments. Plaintiff claims that, after her arrest, deputies commenced an investigation into her used car business and conspired with Albert along the way.

In their motion for summary judgment, Defendants McLarry, Cummings, Fenimore, Winn and Tatum argue that they are entitled to summary judgment as a matter of law under the doctrine of qualified immunity.[2] Plaintiff has filed a response in opposition.

The Court addresses the record before it.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when, viewing the evidence and all justifiable inferences in the light most favorable to the non-moving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Hunt v. Cromartie*, 526 U.S. 541, 549, 119 S. Ct. 1545, 143 L. Ed.2d 731 (1999). The appropriate inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S. Ct. 2505, 91 L. Ed.2d 202 (1986).

---

"intentional interference with business relations." *See* Dkt. 158.

[2]Defendants also argue that they are entitled to official immunity on Plaintiff's state law claims. As noted above, those claims have been dismissed.

The party moving for summary judgment has the initial burden to prove there are no genuine issues of material fact for trial. *Provident Life & Accident Ins. Co. v. Goel,* 274 F.3d 984, 991 (5th Cir. 2001). In sustaining this burden, the movant must identify those portions of pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S. Ct. 2548, 2553, 91 L. Ed.2d 265 (1986). The moving party, however, "need not negate the elements of the nonmovant's case." *Little v. Liquid Air Corp*., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). The movant's burden is only to point out the absence of evidence supporting the nonmoving party's case. *Stults v. Conoco, Inc*., 76 F.3d 651, 655 (5th Cir. 1996).

In response, the nonmovant "may not rest upon mere allegations contained in the pleadings, but must set forth and support by summary judgment evidence specific facts showing the existence of a genuine issue for trial." *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citing *Anderson*, 477 U.S. at 255-57, 106 S. Ct. at 2513-14). Once the moving party makes a properly supported motion for summary judgment, the nonmoving party must look beyond the pleadings and designate specific facts in the record to show that there is a genuine issue for trial. *Stults*, 76 F.3d at 655. The citations to evidence must be specific, as the district court is not required to "scour the record" to determine whether the evidence raises a genuine issue of material fact. E.D. TEX. LOCAL R. CV-56(d). Neither "conclusory allegations" nor "unsubstantiated assertions" will satisfy the nonmovant's burden. *Stults*, 76 F.3d at 655.

"The nonmovant is also required to articulate the precise manner in which the submitted or identified evidence supports his or her claim." *Smith ex rel. Estate of Smith v. United States*, 391 F.3d 621, 625 (5th Cir. 2004). As such, "when evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court." *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003).

### EVIDENCE PRESENTED

In support of their motion, Defendants offer the following evidence (1) Exhibit A: Oral Deposition of Gary Keith McLarry; (2) Exhibit B: Affidavit of Chief Investigator Lewis Tatum; (3) Exhibit C: Oral Deposition of Jody Elizabeth Bender; (4) Exhibit D: Expert Report of Margo Frasier; (5) Exhibit E: Affidavit of Sgt. Paul Fenimore; (6) Exhibit F: Deposition Excerpts of Paul Fenimore; (7) Exhibit G: Affidavit of Judge Bradley Cummings; (8) Exhibit H: Transcript of Dash Cam DVD; (9) Exhibit I: Indictment - Theft (31.03 T.P.C.); (10) Exhibit J: Written Plea Admonishments; (11) Exhibit K: Transcription of Plea Hearing; (12) Exhibit L: Deposition Excerpts of Johnny Bryant; (13) Exhibit M: Texas Department of Motor Vehicle Records, Escalade; (14) Exhibit N: Texas Department of Motor Vehicle Records, Dodge; (15) Exhibit O: Texas Department of Motor Vehicle Records, Volvo; and (16) Exhibit P: Texas Comptroller Records. Dkt. 146-1 - 146-16.

In response to the motion for summary judgment, Plaintiff attaches the following evidence: (1) Exhibit A: Affidavit of Jody Bender; (2) Exhibit B: Excerpts from Deposition Transcript of Jody Bender; (3) Exhibit C: Affidavit of Jeffery Bender; (4) Exhibit D: In-car Camera Recording on DVD;

(5) Exhibit E: Expert Report of Timothy Bratten; (6) Exhibit F: Excerpts of Deposition Transcript of Gary McLarry; (7) Exhibit G: Excerpts from Deposition Transcript of Lewis Tatum; (8) Exhibit H: Excerpts from Deposition of Paul Fenimore; (9) Exhibit I: Excerpts from Deposition Transcript of Bradley Cummings; (10) Exhibit J: Affidavit of Faith Huffman; (11) Exhibit K: Excerpts of Deposition Transcript of Stephen Mark Albert; (12) Exhibit L: Excerpts of Deposition Transcript of Sherra Goodson Tilson; (13) Exhibit M: Excerpts of Deposition Transcript of Alicia Deann Harrington; and (14) Exhibit N: Media Report on Plea Agreement of Daniel Winn. Dkt. 153-1 - 153-14.

## FACTUAL BACKGROUND

The summary judgment record sets forth the following evidence regarding the three occurrences forming the basis of Plaintiff's Section 1983 claims.

### *February 24, 2012 Arrest for UUMV*

On February 24, 2012, Roberto and Alejandra Lira reported to the Hopkins County Sheriff's Office that, the night before, Plaintiff repossessed their 2001 Volvo, despite the fact that the vehicle was paid off. Dkt. 146-1 at 985-86. Lt. McLarry took the Liras' Voluntary Statements and prepared the Offense/Incident Report. *Id.*; Dkt. 146-2. Alejandra Lira told investigators that when she and her mother got home, two women and a man were waiting for them. Dkt. 146-2. Alejandra said one of the women "got all up on" her and said "give me your keys, we're taking your car." *Id.* Alejandra told officers that she explained to the group that she had the title to the car and that it belonged to her and her father. *Id.* Alejandra said she was told that if she did not want to pay a fee to have the

car towed, she had to give them the keys and follow them to Jody Bender's property. *Id*. Alejandra told investigators that she felt threatened by the women who showed up at her house demanding her car, so she gave them the keys to the vehicle and followed them. *Id*.

Once at Plaintiff's property, Alejandra explained to Plaintiff that the car was paid off and showed Plaintiff the original title. Dkt. 146-3 at 1006, ¶¶8-24. Nonetheless, Plaintiff kept the Liras' vehicle, which was parked in the back of Plaintiff's property, behind her house. *Id*. at 1006 ¶1-7. Plaintiff gave Alejandra the keys to her vehicle so that Alejandra could get her personal belongings out of the car and took the keys back when Alejandra was finished. *Id*. at 1007-8. Plaintiff told the Liras they still owed $1,700.00 on the car. *Id.* at 1007 ¶16-19.

The Liras presented Hopkins County investigators with the original Texas Certificate of Title to the vehicle, which showed that the only lien on the Volvo was held by Lone Star Auto Ranch, not Plaintiff, and that the lien was released on February 2, 2012. Dkt. 146-2. The Liras also provided investigators with a Cash Receipt, showing the Volvo was "PAID IN FULL" on February 2, 2012. *Id*.

Lt. McLarry submitted the Offense/Incident Report, Title and Cash Receipt to Chief Investigator Tatum. *Id*. Based on these materials, the Liras' vehicle was entered into TCIC and NCIC as stolen. *Id*. According to the summary judgment evidence submitted by Defendants, vehicles that are reported stolen are entered into TCIC/NCIC to lessen the likelihood that the vehicle will be resold, re-titled and/or secreted. Dkt. 146-4 at 1030. Alejandra Lira reported to investigators that the last time she saw the Volvo, it was parked on Plaintiff's property in Hopkins County and

Plaintiff had possession of the keys. Dkt 146-2.

Later the same day, Lt. McLarry and Deputy Fenimore went to Plaintiff's property to recover the stolen vehicle. Dkt. 146-5. According to Deputy Fenimore, the officers went to Plaintiff's property in Lt. McLarry's patrol vehicle so that Deputy Fenimore could drive the Volvo back to the Sheriff's Office once it was recovered. *Id*. The officers made initial contact with Plaintiff's husband, Jeff Bender, at the Benders' mechanic business, the Auto Diesel Corral, but Plaintiff was not on the property at the time. *Id.*

According to Deputy Fenimore, when the officers inquired about the Volvo, Mr. Bender told them that it was parked in a lot behind the mechanic's business where other cars were parked. *Id.* He pointed to where the Volvo was parked and said something to the effect of, "Yeah, there's one right back there. You can check it out if you want to." *Id.*; Dkt. 146-6 at 1037 ¶12-25. Deputy Fenimore walked to where the Volvo was parked and verified the Vehicle Identification Number and license plate number with dispatch. Dkt. 146-5. Dispatch confirmed that the Volvo parked on Plaintiff's property was the same Volvo identified as stolen in TCIC/NCIC. *Id*.

Once Plaintiff arrived, the Officers made contact with her. *Id*. According to Deputy Fenimore, Plaintiff admitted that she sent her employees to Mr. Lira's home to repossess the Volvo. *Id*. Plaintiff also admitted that she was in possession of the stolen vehicle and that it was parked in the overflow lot at the back of her property. *Id*.

According to Defendants' summary judgment evidence, officers explained to Plaintiff that they were there to recover the 2001 Volvo. *Id.*; Dkt. 146-8 at 1047 ¶1. Officers advised Plaintiff

that she was in possession of a stolen vehicle. *Id.* Lt. McLarry explained to Plaintiff that the Sheriff's Office was in possession of the original Certificate of Title to the vehicle. *Id.* At least two vehicles were blocking access to the Volvo, preventing recovery of the vehicle. Dkt. 146-5. Defendants allege that, multiple times, Lt. McLarry instructed Plaintiff to move the vehicles that were parked in front of the Volvo; however, each time, Plaintiff either ignored Lt. McLarry or changed the subject. *Id.*; Dkt. 146-8 at 1047-48. Defendants claim that Plaintiff also did not comply with officers' multiple requests for the keys to the Volvo. Dkt. 146-5.

According to the summary judgment evidence offered by Defendants, Plaintiff took no action to surrender the vehicle to officers, even after being told the vehicle had been reported stolen, that she was in possession of a stolen vehicle, that the original title was in hand and that the vehicle was being recovered as evidence. *Id.*

Deputy Fenimore stated that he, again, confirmed with dispatch that TCIC and NCIC showed the Volvo as stolen. *Id.* Fenimore believed that probable cause existed to believe Plaintiff had committed a crime or was committing a crime. *Id.*

Plaintiff was placed under arrest by Lt. McLarry and Sgt. Cummings for Unauthorized Use of a Motor Vehicle. Dkt. 146-7. After she was initially handcuffed, Plaintiff asked if she could leave her purse with her husband instead of taking it to jail. *Id.* Sgt. Cummings uncuffed Plaintiff and allowed her to remove the purse from her arm. *Id.* Also, at Plaintiff's request, Sgt. Cummings removed Plaintiff's cell phone from her jacket pocket and gave it to her husband. *Id.*

Defendants have offered summary judgment evidence supporting their claim that, in trying to effect Plaintiff's arrest, no deputy used any more force than was necessary to make the arrest. *Id.*; Dkt. 146-5. Sgt. Cummings' audio recorder was on during entirety of Plaintiff's arrest. Dkt. 146-7; Dkt. 146-8. The entire dialog between Sgt. Cummings and Plaintiff is as follows:

| | |
|---|---|
| Sgt. Cummings: | Keep walking. |
| Sgt. Cummings: | (Inaudible). Tight enough on you? |
| Jody Bender: | (Inaudible.) |
| Sgt. Cummings: | Hold on. Keep your hand right here. |
| Jody Bender: | He says it doesn't matter. The only – you want to just give that (inaudible). |
| Deputy Fenimore: | You want me to give that to him? Where is your ID? |
| Jody Bender: | Jeff. |
| Sgt. Cummings: | Is it in here? Put it in your wallet. |
| Jody Bender: | In that one right there. |
| Sgt. Cummings: | This one? |
| Jody Bender: | No, the other one. |
| Sgt. Cummings: | There's nothing in there I need to know about? |
| Jody Bender: | Okay. Right there. No, no. Here. Here. |
| Sgt. Cummings: | Is this your wallet, your ID card?<br>She wants him to have this.<br>Go ahead and sit down. Do you have anything on you, you need to tell me about now? |

| | |
|---|---|
| Jody Bender: | No, I have a cell phone. |
| Sgt. Cummings: | Where is your cell phone at? |
| Jody Bender: | Coat pocket. |
| Sgt. Cummings: | Anything you want him to have? |
| Jody Bender: | No, you can have both of those. |
| Sgt. Cummings: | You don't need any number out of it? |
| Jody Bender: | I want him to be able to call because he won't have the phone number either. |
| Sgt. Cummings: | All right.  Go ahead and – go ahead and – we'll make sure he has the number. |

Dkt. 146-8 at 1047 ¶17 - 1050 ¶7.  The sum of the conversation between Sgt. Cummings and Plaintiff involved getting her purse and cell phones to her husband before she was transported to Jail. *Id*.; Dkt. 146-7.  There is nothing credible in the record to show that Plaintiff expressed any discomfort, pain or objection at any time.  *Id*.

On September 25, 2012, Plaintiff was indicted by a duly impaneled Hopkins County Grand Jury for Theft of Roberto Lira's 2001 Volvo.  *Id*.  Plaintiff pled guilty to misdemeanor Theft of Property on December 1, 2014.  Dkt. 146-10.  Plaintiff freely and voluntarily testified, under oath, that she was guilty of theft of Roberto Lira's 2001 Volvo, for which she was arrested on February 24, 2012.  *Id*. at 1062; Dkt. 146-11 at 1065-67.

Texas Department of Motor Vehicle Records establish that, on February 24, 2012, Roberto Lira, not Plaintiff, was the owner of the Volvo. Dkt. 146-15. Further, the lienholder is identified as Lone Star Auto Ranch, not Plaintiff, and the lien was released on February 2, 2012. *Id.*

Neither Chief Investigator Tatum nor Sgt. Winn were present during Plaintiff's arrest. Dkt. 146-2.

<u>*May 1, 2012 Assault/Assault Family Violence Call*</u>

On May 1, 2012, Sgt. Winn and Deputy Fenimore were dispatched to a call which dispatch classified as Assault/Assault Family Violence at Plaintiff's Property. Dkt. 146-5; Dkt. 146-3 at 1015. According to the dispatch records attached to Defendants' summary judgment records, the complainant advised that he went to pick up his Cadillac Escalade, at Plaintiff's business, the Auto Diesel Corral, and that he was threatened by two men. *Id. See also* Dkt. 133, ¶31-2. The call was disposed of as a civil matter, and dispatch noted that a wrecker picked up the vehicle. *Id.*

Plaintiff testified at her deposition that she was out of town and not present on her property on May 1, 2012. Dkt. 146-3 at ¶1016-17. In fact, no one was arrested at Plaintiff's property on May 1, 2012. Dkt. 146-5. No criminal case file was opened by the Sheriff's Office as a result of the call for service at Plaintiff's property on May 1, 2012. Dkt. 146-2.

According to the deposition testimony offered by Defendants, the Escalade was not impounded by the Hopkins County Sheriff's Office. Dkt. 146-12 at 1076-77. Instead, it was towed to Bryant's Auto Salvage & Wrecker Service's ("Bryant's") pound lot, at the request of its owner, Ethan Fritz. *Id.* at 1073 ¶15-16; 1078 ¶3-15; 1082 ¶23 - 1083 ¶10. According to Bryant's

paperwork, the Hopkins County Sheriff's Office never had a "hold" on the Escalade. *Id*. at 1084 ¶22 - 1085 ¶17. Plaintiff never took any documentation to Bryant's related to the Escalade. *Id*. at 1080 ¶13-22; 1081¶1-7; 1082¶5-22.

According to Texas Department of Motor Vehicle records, on May 1, 2012, Ethan Fritz, not Plaintiff, was the owner of the Escalade. Dkt. 146-13. Further, the lienholder is identified as Lone Star Auto Ranch, not Plaintiff, and the lien was released on November 18, 2011. *Id*.

*August 2, 2012 Civil/Stand-by Call*

On August 2, 2012, Lt. McLarry and Sgt. Cummings were dispatched to a call that dispatch classified as a Civil/Stand-by at Plaintiff's mechanic's shop, the Auto Diesel Corral. Dkt. 146-7; Dkt. 146-3 at 1019 ¶16 - 1020 ¶14. According to dispatch, the caller advised that she needed a deputy to help retrieve a vehicle which Plaintiff claims was a red Dodge pick- up truck. *Id.*; Dkt. No. 133, ¶34. Plaintiff testified that she was out of town and not present on her property on August 2, 2012. Dkt. 146-3 at 1020 ¶15 - 1021 ¶4.

The Hopkins County Sheriff's Office did not impound a vehicle from Plaintiff's property on August 2, 2012. Dkt. 146-7. No one was arrested at Plaintiff's property on August 2, 2012. *Id.* No criminal case file was opened as a result of the call for service at Plaintiff's property on August 2, 2012. Dkt. 146-2.

According to Texas Department of Motor Vehicle records, on August 2, 2012, Russell Crayton, not Plaintiff, was the owner of the Dodge truck. Dkt. 146-14. Further, the lienholder is identified as Lone Star Auto Ranch, not Plaintiff, and the lien was released on November 16, 2011.

*Id.*

<u>Plaintiff's Partner Steve Albert</u>

Jody Bender was Steve Albert's partner in Lone Star Auto Ranch. Dkt. 146-3 at 1003 ¶10 - 1004 ¶3. Jody Bender became partners with Steve Albert in the business because "he was in dire need somebody to help him" and "he was going under." *Id*. at 1003 ¶10-25. Plaintiff testified that after she joined the business, Lone Star Auto stopped making money, so it went out of business in February of 2012. *Id*. at 1004 ¶13-19. According to Plaintiff, she owned the Auto Diesel Corral in 2012. *Id*. at 1010 ¶13-18.

Days after her arrest on February 24, 2012, Texas Ranger John Vance accompanied Hopkins County Officer and Texas Comptroller Investigator Jackie Miers to Plaintiff's property. *Id*. at 1001 ¶16 - 1002¶10. Further, Texas Comptroller Investigator Jackie Meirs investigated Jody Bender as a suspect. Dkt. 146-16.

**ANALYSIS**

The Court has reviewed the summary judgment record and finds that there is no fact issue as to Plaintiff's claims under Section 1983.

Plaintiff has asserted claims of constitutional violations against Defendants under Section 1983. Section 1983 "provides a federal cause of action for the deprivation, under color of law, of a citizen's rights, privileges, or immunities secured by the Constitution and laws of the United States." *Livadas v. Bradshaw*, 512 U.S. 107, 132, 114 S. Ct. 2068, 129 L. Ed.2d 93 (1994) (internal quotation marks omitted). It "afford[s] redress for violations of federal statutes, as well as of

constitutional norms." *Id*. "To state a claim under § 1983, a plaintiff must (1) allege a violation of rights secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *Moore v. Dall. Indep. Sch. Dist.*, 557 F. Supp.2d 755, 761 (N.D. Tex. 2008) (quoting *Leffall v. Dall. Indep. Sch. Dist.*, 28 F.3d 521, 525 (5th Cir. 1994)), aff'd, 370 Fed. App'x 455 (5th Cir. 2010).

In response to Plaintiff's Section 1983 claims, the Deputy Defendants have asserted qualified immunity defenses. "Qualified immunity protects governmental officials from liability so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Carroll v. Ellington*, No. 13-20388 p. 15 (5th Cir. 2015) (*quoting Rockwell v. Brown*, 664 F.3d 985, 990 (5th Cir. 2011)).

Evaluating qualified immunity is a two-step process. First, a court determines whether the plaintiff has alleged a violation of a clearly established constitutional or statutory right. "The Fourth Amendment requires that an arrest be supported by a properly issued arrest warrant or probable cause. The officers are entitled to qualified immunity for the arrest if 'a reasonable person in their position could have believed he had probable cause to arrest.'" *Glenn v. City of Tyler*, 242 F.3d 307, 313 (5th Cir. 2001) (*quoting Goodson v. City of Corpus Christi*, 202 F.3d 730, 740 (5th Cir. 2000)). Probable cause "exists 'when the totality of the facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense.'" *Spiller v. City of Tex. City, Police Dep't*, 130 F.3d 162, 165 (5th Cir. 1997) (citation omitted). "Thus, the central question in our qualified immunity

inquiry is 'the objective (albeit fact-specific) question whether a reasonable officer could have believed [the arrest] to be lawful, in light of clearly established law and the information the [arresting] officers possessed.'" *Sorenson v. Ferrie*, 134 F.3d 325, 328 (5th Cir. 1998) (alterations in original) (*quoting Anderson v. Creighton*, 483 U.S. 635, 641, 107 S. Ct. 3034, 97 L. Ed.2d 523 (1987)).

If a plaintiff has alleged a violation of a clearly established right, the next step is for a court to determine whether the official's conduct was objectively reasonable under the law at the time of the incident. *Michalick v. Hermann*, 422 F.3d 252 (5th Cir. 2005), *citing Sanchez v. Swyden*, 139 F.3d 464, 467 (5th Cir. 1998) (citations omitted). The plaintiff bears the burden of proving that a government official is not entitled to qualified immunity. *See, e.g., Bennett v. City of Grand Prairie*, 883 F.2d 400, 408 (5th Cir. 1989). Each individual's entitlement to qualified immunity is considered separately. *Meadours v. Ermel*, 483 F.3d 417, 422 (5th Cir. 2007).

In her complaint, Plaintiff complains of three separate occasions on which Hopkins County Deputies were dispatched to her property: (1) her arrest for UUMV on February 24, 2012; (2) an Assault/Assault Family Violence call on May 1, 2012; and (3) a Civil/Stand-by call on August 2, 2012. All incidents directly or indirectly involve her mechanics shop, the Auto Diessel Corral. The Court evaluates each incident under the two-prong qualified immunity test.

*February 24, 2012 Arrest for UUMV*

Regarding her February 24, 2012 arrest, Plaintiff complains that Chief Investigator Lewis Tatum, Lt. Gary McLarry, Sgt. Brad Cummings and Deputy Paul Fenimore violated her Fourth and

Fourteenth Amendment rights to be free from unlawful arrest, unlawful search and seizure and excessive force, made actionable under 42 U.S.C. § 1983. Defendants argue that they are entitled to summary judgment because Plaintiff cannot demonstrate that no probable cause existed for her arrest and, therefore, cannot establish the elements of her unlawful arrest and false imprisonment claims.

An arrest is illegal and therefore violative of the Fourth Amendment if it was made without probable cause. *Baker v. McCollum*, 443 U.S. 137, 144-45, 99 S. Ct. 2689, 61 L. Ed. 2d 433 (1979). Probable cause exists where an officer possesses knowledge that would warrant a prudent person's belief that the plaintiff had already committed or was committing a crime. *See Eugene v. Alief Indep. Sch. Dist.*, 65 F.3d 1299, 1305 (5th Cir.1995).

The probable cause inquiry is an objective one. "A police officer need not actually have had the crime for which probable cause existed in mind at the time of the arrest; rather, the question is 'whether the conduct that served as the basis for the charge for which there was no probable cause could, in the eyes of a similarly situated reasonable officer, also have served as the basis for a charge for which there was probable cause.'" *Gassner v. City of Garland, Tex.*, 864 F.2d 394, 398 (5th Cir. 1989) (*quoting Trejo v. Perez*, 693 F.2d 482, 486 (5th Cir. 1982)). *See also Siegert v. Gilley*, 500 U.S. 226, 111 S.Ct. 1789, 114 L. Ed.2d 277 (1991). A right is clearly established if its contours are "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Wooley v. City of Baton Rouge*, 211 F.3d 913, 919 (5th Cir. 2000) (internal citations omitted). In a 42 U.S.C. § 1983 suit alleging false arrest, in response to a defendant's motion for

16

summary judgment based on qualified immunity, the burden is on the plaintiff to show that the officer lacked probable cause, which means that he must show that the legality of his conduct was clearly established. *See Sorenson*, 134 F.3d at 330.

The Court has received the videotape of the arrest and the other summary judgment evidence regarding her arrest. The officers informed Plaintiff that the vehicle was reported stolen. Plaintiff admitted to her possession of the vehicle. The summary judgment evidence demonstrates that Plaintiff refused to turn over the vehicle, and she was arrested. Plaintiff cannot demonstrate that no probable cause existed to arrest her. The Court further finds that no excessive force was used. She shall take nothing by her Section 1983 claims regarding the February 2012 arrest.

*May 1, 2012 Assault/Assault Family Violence Call & August 2, 2012 Civil/Stand-by Call*

Regarding the call for service on May 1, 2012, Plaintiff complains that her Cadillac Escalade was unlawfully seized by Sgt. Daniel Winn and Deputy Fenimore. Likewise, Plaintiff complains that her Dodge truck was unlawfully seized on August 2, 2012 by Lt. McLarry and Sgt. Cummings. Plaintiff brings additional Section 1983 claims against Investigator Tatum, Sgt. Winn and Deputy Fenimore of conspiracy to deprive her of her personal property. Defendants argue that they are entitled to summary judgment because Plaintiff cannot establish standing to bring Constitutional claims related to the vehicles at issue.

Plaintiff has the burden to show that she has standing to bring her claims. "[B]efore a federal court can consider the merits of a legal claim, the person seeking to invoke jurisdiction must establish the requisite standing to sue." *Whitmore v. Arkansas*, 495 U.S. 149, 154-55 (1990).

17

Standing under Article III of the Constitution requires that a plaintiff demonstrate that she has suffered an "injury in fact" which is, (1) concrete, particularized and actual or imminent; (2) fairly traceable to the defendant's conduct; and (3) redressable by a favorable ruling. *See Monsanto Co. v. Geertson Seed Farms*, 130 S.Ct. 2743, 2752 (2010); *Home v. Flores*, 129 S. Ct. 2579, 2591-2, 174 L. Ed.2d 406 (2009). The right to be free from unreasonable searches and seizures is a personal right which cannot be asserted vicariously. *See Rakas v. Illinois*, 439 U.S. 128, 133–34, 99 S.Ct. 421, 425–26, 58 L.Ed.2d 387 (1978).

Here, Plaintiff was not present during the police actions she complains of and only alleges the violations of other person's rights. The records of the Texas Department of Motor Vehicles made part of the summary judgment record establish that Plaintiff was not the owner of the Cadillac Escalade or Dodge truck. Officers were merely present when the Cadillac Escalade was towed, at the owner's direction, because officers were dispatched to the scene on an Assault call. Similarly, officers were present when the Dodge truck was transferred from the truck's owner to his girlfriend. There is no evidence that any Defendant searched or seized these vehicles.

Further, Plaintiff has provided no evidence, only conclusory statements, that even tends to suggest she was the owner of these vehicles. According to the record before the Court, Plaintiff was not the owner of either of these vehicles; as a result, Plaintiff lacks standing to bring claims related to the vehicles. Plaintiff has no standing to assert the rights of third parties, and there is no evidence in the summary judgment record that shows that Plaintiff was personally subjected to an illegal search or seizure.

Because Plaintiff lacks standing, there can be no Fourth Amendment or Due Process violation and Plaintiff shall take nothing by these allegations.

*Other Constitutional Claims*

The Court notes that Plaintiff's amended complaint also brings a Section 1983 claim of conspiracy to interfere with Plaintiff's business against Investigator Tatum and *pro se* Defendant Steve Albert. Further, Plaintiff attempts to bring a Section 1983 defamation claim against Investigator Tatum for statements published in a newspaper article following her arrest. Plaintiff has failed to demonstrate a fact issue as to any of these claims, even assuming they are adequately stated.

Defendants argue that they are entitled to summary judgment because Plaintiff cannot demonstrate that an actual deprivation of a constitutional right existed that is connected to her conspiracy or defamation claims under Section 1983.

To support a Section 1983 liability on a theory of conspiracy, the plaintiff "must allege facts that suggest: 1) an agreement between the private and public defendants to commit an illegal act and 2) an actual deprivation of constitutional rights." *Cinel v. Connick*, 15 F.3d 1338, 1343 (5th Cir. 1994) (citing *Arsenaux v. Roberts*, 726 F.2d 1022, 1024 (5th Cir. 1982); *Villanueva v. McInnis*, 723 F.2d 414, 418 (5th Cir. 1984)). "A conspiracy may be charged under § 1983 as the legal mechanism through which to impose liability on all of the defendants without regard to who committed the particular act, but 'a conspiracy is not actionable without an actual violation of section 1983.'" *Hale v. Townley*, 45 F.3d 914, 920 (5th Cir. 1995) (*quoting Pfannstiel v. City of Marion*, 918 F.2d 1178, 1187 (5th Cir.1990)). A court need not determine whether a conspiracy exists when the

defendant is found to hold qualified immunity as to the actions underlying the alleged conspiracy. *See Hale*, 45 F.3d at 920-21.

As discussed above, probable cause existed for Plaintiff's arrest, as a matter of law; therefore, no violation of a clearly established constitutional right exists in this case. Consequently, Plaintiff's § 1983 conspiracy claim is not actionable and summary judgment is proper.

As to Plaintiff's defamation claim, it is based upon the following two statements: (1) Plaintiff was in business as Lone Star Auto on the service road, it went belly up, and Plaintiff then went into partnership with Auto Diesel Corral; and (2) Tatum said the Texas Rangers and Texas Comptroller's Office have been apprised of the allegations and are involved in the investigation of the claims. According to the summary judgment record, both of the allegedly defamatory statements are, without dispute, true statements.

Further, Plaintiff has suffered no infringement of a constitutional right in connection with the alleged defamation. Other than a conclusory statement that Plaintiff has "suffered direct economic loss attributable to the publication of Tatum's statements in her businesses," Plaintiff provides no other evidence that supports her claim. *See* Dkt. No. 133, ¶53. As a result, Plaintiff's defamation claim is not actionable under § 1983 and summary judgment is granted for Defendants as to that claim.

Having reviewed the record in its entirety, the Court finds that the Deputy Defendants are entitled to qualified immunity because Plaintiff has failed to demonstrate a fact issue regarding any act on their part that violated the Constitution. Their conduct was objectively reasonable in light of

clearly established law, and qualified immunity bars the claims against them. There is simply no evidence of any constitutional violation here, and Plaintiff shall take nothing by her Section 1983 claims against the County and its Deputies.

*Defendant Albert*

The Court notes that Defendant Albert, who has appeared *pro se*, is not a movant in the underlying motion. As the Court has noted, Plaintiff's complaint does not explicitly identify separate causes of action or how they apply to each Defendant. Nonetheless, the Court finds that the majority of allegations against him are disposed of in conjunction with Defendants' motion for summary judgment.

Plaintiff alleges that Albert conspired with Tatum to interfere with her business and that "[t]his interference constitutes a seizure in violation of the Fourth Amendment, as well as a denial of due process under the Fourteenth Amendment." Dkt. 133 at ¶29. Plaintiff further alleges that she "has suffered additional economic harm from the loss of income attributed to the actions of Defendants Tatum and Albert in conspiring to intentionally interfering in her business affairs and with her property rights." Dkt. 133 at ¶37. Plaintiff's complaint later alleges that "Defendants Tatum and Albert subsequently conspired and acted in concert to interfere with the business relations in violation of Texas state law, and also served to violate Mrs. Bender's constitutional rights to be free from unreasonable seizures under the Fourth Amendment." Dkt. 133 at ¶44. According to Plaintiff, Albert's conspiracy with Tatum, has caused her significant economic loss, harm to her business reputation, and mental anguish for which she seeks damages along with an award of

attorney's fees and exemplary damages.  Dkt. 133 at ¶55 and 69

Because the Court has found that Plaintiff has failed to sustain her burden in showing a fact issue as to the alleged underlying constitutional violations against the Deputy Defendants, she has no claim for conspiracy against Albert.  Further, because the Court has already dismissed her vaguely pleaded claim of interference with business relations against Tatum, there is no claim for conspiracy to interfere such relations.  Just as Plaintiff's constitutional claims against the Deputy Defendants fail, so do his conspiracy claims against Albert.

This leaves Plaintiff's claim of breach of fiduciary duty, conversion, and fraud as to Defendant Albert.  Dkt. 133 at 56.  These are state law claims over which the Court has supplemental jurisdiction and the only claims remaining in this suit.  The Court declines to exercise jurisdiction over them and therefore dismisses them without prejudice to raising in a court of proper jurisdiction.

For these reasons, the Court GRANTS Defendants' Motion for Summary Judgment (Dkt. 145) and Plaintiff shall take nothing by any of her Section 1983 claims against Hopkins County and its Deputy Defendants.  Plaintiff shall also take nothing by any any conspiracy claims against Albert arising out of her Section 1983 claims against the Deputy Defendants and Hopkins County.  The County and its Deputies Defendants shall be awarded their costs.[3]

---

[3]Defendants' motion also seeks recovery of fees but submits no briefing as to why such an award is warranted.  The Court therefore does not address that request here.

Plaintiff's claim of breach of fiduciary duty, conversion, and fraud as to Defendant Albert are dismissed without prejudice, and this matter shall be closed on the Court's docket.

**SO ORDERED**.

**SIGNED this 28th day of March, 2016.**

_Don D. Bush_

DON D. BUSH
UNITED STATES MAGISTRATE JUDGE